**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

| | |
|---|---|
| SYNERGY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MANAMA TEXTILE MILLS, W.L.L. | ) |
| | ) |
| | ) |
| Defendant. | ) |

_____)

Hon. Harold A. Ackerman

Civil Action No. 06-4129

**OPINION & ORDER**

Harry J. Nicolay, Esq.
COLLIER, HALPERN, NEWBERG, NOLLETTI & BOCK, LLP
161 Eagle Rock Road
Roseland, New Jersey 07068
*Attorneys for Plaintiff*

David P. Langlois, Esq.
SUTHERLAND ASBILL & BRENNAN LLP
1114 Avenue of the Americas, 40th Floor
New York, New York 10036

Richard G. Murphy, Jr., Esq.
Christian J. Cannon, Esq.
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Ave., NW
Washington, DC 20004
*Attorneys for Defendant*

**ACKERMAN, Senior District Judge:**

This matter comes before the Court on the motion (Doc. No. 11) by Defendant Manama

Textiles Mills, W.L.L. ("Manama") to dismiss the Complaint filed by Plaintiff Synergy, Inc.

("Synergy") for lack of personal jurisdiction.  For the following reasons, Manama's motion to

dismiss will be denied.

### Background

As this case is before the Court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), this Court will view the facts and consider the documentary submissions in a light most favorable to Plaintiff.  *See One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.*, 987 F. Supp. 317, 322 (D.N.J. 1997) ("In deciding whether the plaintiff has satisfied this burden [to demonstrate personal jurisdiction], a court resolves all disputes concerning material facts in the plaintiff's favor."); *see also Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992) ("[B]y accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute.").

This case arises out of a series of product manufacturing agreements between Manama and Synergy.  Manama is a foreign corporation organized and existing under the laws of the Kingdom of Bahrain, and engaged in the business of manufacturing and exporting cotton textiles. Synergy is a New Jersey corporation that manufactures bed sheets, pillow cases, and linens, and operates a single facility in Cranford, New Jersey.  Synergy sells its products to large retailers in New Jersey, with annual sales in excess of $32 million.

In October 2005, Manama's Chief Executive Officer, Hamid Nishat, contacted Synergy's agent in Pakistan and Bahrain, Asif Rajput, to discuss the terms of a potential agreement to provide Synergy with textiles, cotton, and finished goods.  The next month, Synergy's President, Gerald Ellner, met with Nishat in Bahrain and entered into an oral agreement with Manama.

Synergy agreed to purchase certain goods from Manama that were capable of being manufactured into bed sheets and pillow cases in satisfaction of Synergy's stated needs and in conformance with industry standards.  The agreement did not otherwise specify the ultimate retail clientele for Manama's products, though the parties contemplated, generally, a long-term relationship that would expand their businesses and establish footholds with other potential retailers for the future. In addition, Synergy alleges that the parties agreed that the goods, once shipped from Bahrain, were subject to final inspection and acceptance by Synergy in New Jersey; Manama disputes this specific contention.  Nowhere in the parties' oral agreement or subsequent sales contracts did the parties designate a choice of forum or applicable law.  Upon Ellner's return to New Jersey, he received an email from Nishat promising to send a sample of Manama's products to Synergy.

Pursuant to their oral agreement, between November 17, 2005 and May 10, 2006, the parties together executed a series of 44 written sales contracts.  The cumulative agreed price for Manama's goods was over $6 million, and Synergy paid this amount to Manama predominantly on an open book account and by letters of credit in discrete sums over the course of eight months. Synergy's financial transactions with Manama were facilitated by Mark Shelinsky, a 50% shareholder in Synergy, and owner of Shelinksy & Sons, Inc. ("Shelinksy & Sons"), with Shelinsky & Sons serving as the named applicant and consignee for Synergy's financial undertakings with Manama.

In executing the 44 written sales contracts, Synergy designated Rajput to serve as its signatory party in Bahrain.  The sales contracts described the "customer" as "Synergy/Cranford USA."  (Aff. of Gerald Ellner in Support of Opp. to Mot. to Dismiss for Lack of Personal Jurisdiction ("Ellner Aff."), Ex. A, Part II.)  The contracts specified that the shipping terms were

3

"C&F" – shorthand for "cost and freight," and provided that the port of delivery was "New York."[1]  (*Id.*)  Notably, and contrary to Synergy's allegation of the oral agreement's stipulation regarding final inspection, the contracts stated: "Final inspection will be conducted by Shelinksy representative in Bahrain 'Mr. Asif R. Rajput.'"[2]  (*Id.*, Ex. A, Part II at 4.)  The sales contracts also named "Standard Chartered Bank," Manama's bank in Bahrain, to facilitate payment of the letters of credit.  (*Id.*)

Prior to each shipment of goods from Bahrain, Rajput inspected them at Manama's facility and furnished Manama with a signed inspection certificate which authorized each delivery.  The inspection certificates provided that Manama remained liable if the quality of the goods did not satisfy the parties' agreement.  Manama did not sign these certificates.

Between November 2005 and August 2006, Synergy and Manama representatives communicated by email over 140 times.  The parties discussed business expectations, prices, shipping dates, quality issues, product samples, conference calls, new technology, payment methods, and later, the ultimate dispute between the parties.  These emails, written in English, were sent and received by Synergy representatives in New Jersey and Manama representatives in Bahrain.  The parties' representatives also communicated by telephone 50 to 60 times to discuss similar business matters.

Between November 2005 and October 2006, Manama arranged for approximately 51 shipments of goods to Synergy in New Jersey on "C&F" terms.  Between March and September

---

[1] The Port Authority of New York and New Jersey, a bi-state agency, operates in the whole New York-New Jersey port region.  Port Authority Home Page, http://www.panynj.gov/.

[2] Some of the sales contracts alternatively described Rajput as "Shelinksy representative in Pakistan."  (*See, e.g.*, Ellner Aff., Ex. A, Part II at 1.)

2006, Manama followed up those shipments with an estimated 51 express mail packages sent directly by air to Shelinksy & Sons in New Jersey containing original commercial invoices, inspection documents, and certificates of origin.  The commercial invoices were prepared by Manama and listed Shelinksy & Sons in New Jersey as the applicant.  Manama included its requests for payment to be drawn from Shelinsky & Son's account at Valley National Bank in New Jersey, and to credit Manama's account at Standard Chartered Bank in Bahrain.  The certificates of origin, signed by Manama, listed Shelinksy & Sons as the consignee and the port of discharge as New York.  The certificates of origin were written in both Arabic and English.

By mid-2006, a dispute developed regarding Manama's alleged breach of contract.  On August 4, 2006, Synergy revoked its acceptance of the goods at issue.  Manama retained three separate entities to attempt to resolve the dispute, including law firms in Bahrain and the United States.  On August 31, 2006, Synergy commenced the instant suit, alleging causes of action for breaches of contract and warranty.  In its Complaint, Synergy alleges that Manama delivered defective products and that such goods were unfit for their intended use.  Synergy also seeks a declaratory judgment for an entitlement to monetary credit against any amounts that Synergy may owe Manama.

On February 16, 2007, Manama moved to dismiss Synergy's Complaint for lack of personal jurisdiction.  Synergy opposes the motion, asserting that Manama is subject to personal jurisdiction in New Jersey because it has sufficient minimum contacts created by its business relationship with Synergy.

*Analysis*

Rule 4(e) of the Federal Rules of Civil Procedure permits a federal court sitting in diversity to assert personal jurisdiction over a non-resident to the extent authorized by the state law in which that court sits. *A.V. Imps., Inc. v. Col de Fratta, S.p.A.*, 171 F. Supp. 2d 369, 370 (D.N.J. 2001). New Jersey's long-arm statute allows this Court to assert personal jurisdiction over a non-resident defendant to the full extent authorized by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Decker v. Circus Circus Hotel*, 49 F. Supp. 2d 743, 745-46 (D.N.J. 1999) (citing *Carteret Sav. Bank*, 954 F.2d at 145). The requirements of the Due Process Clause can only be satisfied by a showing that (1) the defendant has certain minimum contacts with the forum, (2) such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150-51 (3d Cir. 1996) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A court may exercise either specific or general personal jurisdiction. Specific jurisdiction is attained when the controversy is related to or "arises out of" a defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). If the suit does not arise out of or relate to the defendant's contacts with the forum state, the Court may exercise general jurisdiction if such contacts with the forum constitute "continuous and systematic general business contacts." *Id.* at 415-16. The "constitutional touchstone" of personal jurisdiction is whether minimum contacts exist whereby the "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *World-Wide*

6

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  Here, the Court will examine

specific jurisdiction to render Manama amenable to suit.

The plaintiff bears the burden of demonstrating contacts with the forum state sufficient to

establish personal jurisdiction.  *Carteret Sav.*, 954 F.2d at 145-46.  The plaintiff need only make

a prima facie demonstration of jurisdiction by establishing with sufficient particularity the

presence of contacts between the defendant and the forum.  *Mellon Bank (E.) PSFS, Nat'l Ass'n*

*v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).

**I.**     **By Its Actions, Manama Has the Requisite Minimum Contacts To Subject It**
          **to Specific Jurisdiction in this Forum.**

A court may exercise specific jurisdiction over an out-of-state defendant if that out-of-

state defendant "purposefully directed" his activities through certain minimum contacts with the

forum state.  *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984).  What constitutes minimum

contacts varies with the "quality and nature of the defendant's activity," *Hanson v. Denckla*, 357

U.S. 235, 253 (1958), and not the "quantity" of contacts, *DeLear v. Rozel Packing Corp.*, 95 N.J.

Super. 344, 349 (App. Div. 1967).  In fact, "even one contact with the forum may be enough to

justify jurisdiction[.]"  *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483

(3d Cir. 1993).

A contract may provide a basis for the exercise of personal jurisdiction, but a contract

alone does not "automatically establish sufficient minimum contacts in the other party's home

forum[.]"  *Burger King Corp.*, 471 U.S. at 463.  Contacts that are solely "incidental" to the

underlying transactions giving rise to the suit are not the proper basis for a court to find specific

jurisdiction, *DeLear*, 95 N.J. Super. at 350-51; nor are mere "informational communications in

7

furtherance of [a] contract[,]" *Sunbelt Corp. v. Noble, Denton, & Assoc., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993).  Yet, "communication[s] by electronic facilities" are relevant contacts to be considered when such "contacts with the forum were instrumental in either the formation of the contract or its breach."  *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150-51 (3d Cir. 2001).

In *Burger King*, the Supreme Court found the exercise of jurisdiction proper where the defendant, "eschewing the option of operating an independent local enterprise, . . . deliberately reached out beyond [his home forum] and negotiated with a [non-forum] corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization."  471 U.S. at 479-80.  The Court emphasized that the defendant entered "a 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in [the non-forum state]," a relationship that could be viewed as neither "random," "fortuitous," or "attenuated."  *Id*; *see also Travelers Health Ass'n. v. Virginia*, 339 U.S. 643, 648 (1950) (finding specific jurisdiction where non-resident party created "continuing obligations" with residents of the forum).  "When problems arose" over the parties' agreement, the non-resident party understood that "the key negotiating decisions" out of which the subject litigation arose were made from the forum resident's headquarters.  *Burger King*, 471 U.S. at 481.  Thus, the Supreme Court held that the non-resident party had minimum contacts with the forum state sufficient to warrant specific jurisdiction.

Synergy argues, in essence, that five broad categories of contacts between Manama and Synergy give rise to specific jurisdiction over Manama: (1) an oral agreement and subsequent written sales contracts forming a business relationship between the parties; (2) Manama's collection of payments pursuant to contractual agreements with Synergy; (3) emails and

telephone correspondence between Manama in Bahrain and Synergy in New Jersey; (4)

Manama's customized production and shipment of samples, products, and paperwork to Synergy

in New Jersey; and (5) Manama's retention of attorneys and agents to facilitate the enforcement

of the parties' contracts.  As will be seen, this Court will find personal jurisdiction here based on

the stream of commerce theory as applied to Manama's customized production and shipment of

samples, products, and paperwork to Synergy.  However, because the stream of commerce theory

"ought not constitute the *ratio decidendi* if jurisdiction can be sustained on traditional minimum

contacts analysis[,]" *Cruz v. Robinson Engineering Corp.*, 253 N.J. Super. 66, 72 (App. Div.

1992), the Court will first examine Manama's written sales contracts, financial transactions, and

correspondence.  These "traditional" contacts will prove insufficient, but analysis of them is

important to understand the reasons personal jurisdiction may be ultimately exercised in this

case.

### A.        Oral Agreement and Subsequent Written Sales Contracts

The provisions of the parties' November 2005 oral agreement and subsequent written

sales contracts offer divergent support for specific jurisdiction.  The Court will first look to the

terms of the parties' oral agreement.  The Court will then evaluate those stipulations of the

written sales contracts that shed light on whether Manama purposefully directed its activities to

New Jersey.  Those express terms include that: (1) Synergy's "final inspection" was to occur in

Bahrain; and (2) Manama's goods were to be shipped on "C&F" terms.  After analyzing the

terms of the parties' contracts, the Court will examine Manama's remaining contacts with New

Jersey in Sections I.B-D.

*1.        Oral Agreement of November 2005*

9

Based on Ellner's sworn affidavit, Manama and Synergy orally agreed that Manama would manufacture cotton and textile products for Synergy's New Jersey business.  (Ellner Aff. at ¶ 4.)  The oral agreement contemplated a long-term relationship, although the parties did not discuss a specific period of time.  The agreement stipulated that the goods be capable of being manufactured into bed sheets and pillow cases by Synergy in New Jersey.  Synergy also contends that the parties agreed that Manama's goods were subject to final inspection in New Jersey to ensure business and industry compliance.  From this oral contract, it appears that Manama intended to procure the "manifold benefits that would derive from affiliation" and development of a business relationship with Synergy such that may render Manama amenable to suit in New Jersey.  *See Burger King*, 471 U.S. at 479-80.  However, "[t]he fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident."  *Farino*, 960 F.2d at 1223.  Thus, the Court proceeds to analyze the terms of the written contracts.

### 2.     *Location of "Final Inspection" of the Products*

Unlike the oral agreement, the terms of the subsequent written sales contracts do not support Synergy's prima facie case of jurisdiction.  Synergy proffers inspection certificates that Rajput affixed on Manama's shipments prior to the goods' delivery to port in Bahrain.  These certificates read: "I have checked few rolls and found the quality satisfactory.  But still Manama Textile Mills W.L.L. will be responsible if we found defects[.]"  (Ellner Aff., Ex. D.)  Based on these certificates, Synergy contends that the final performance of the parties' contract was to occur *in New Jersey*, in accordance with the oral agreement.  Thus, Synergy argues, Manama purposefully directed its activities to New Jersey because Manama intended its sales contracts to

10

be ultimately performed in New Jersey.

It is well established that personal jurisdiction cannot be based on the unilateral activity of the resident party. *Waste Mgmt. v. Admiral Ins. Co.*, 138 N.J. 106, 121 (1999) (holding that requirement of purposeful availment protects defendants against being "haled into court in a foreign jurisdiction solely . . . as a result of the unilateral activity of some other party.") (citing *Burger King*, 471 U.S. at 475).  The inspection certificates were signed only by Rajput, Synergy's agent in Bahrain, and so Synergy's placement of continued responsibility on Manama constituted a unilateral act, which cannot serve as a basis for supporting Manama's minimum contacts.

Even without considering the inspection certificates, Synergy maintains that Manama purposefully directed its activities to New Jersey by virtue of the fact that the parties allegedly agreed in the oral contract that the final inspection was to take place in New Jersey.  Manama demurs, arguing that Synergy acted on its own accord when it inspected the goods in New Jersey, and that Manama never agreed that the contracts were to be ultimately performed in New Jersey. Rather, Manama contends, the parties mutually agreed in writing that the final inspection and acceptance would occur in Bahrain: "Final inspection will be conducted by Shelinsky representative in Bahrain, 'Mr. Asif R. Rajput.'" (Ellner Aff., Ex. A, Part II at 4.)  Manama's argument is persuasive.  When juxtaposed with the express terms of the sales contracts, Synergy's allegation that the final inspection was to occur in New Jersey does not support its prima facie case of jurisdiction.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is "inherently a matter which requires resolution of factual issues outside the pleadings[.]" *Hostettler v. Bigelsen*, No. 91-

5265, 1992 WL 91707, at *2 (D.N.J. March 2, 1992) (internal quotation omitted).  "Unlike summary judgment proceedings, in which a party need only submit affidavits which make out disputes of material fact, in establishing in personam jurisdiction, [the resident party] ha[s] a burden of proof to sustain, and thus mere affidavits which . . . restate plaintiff's allegations" cannot support personal jurisdiction.  *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984); *see also Patterson v. FBI*, 893 F.2d 595, 604 (3d Cir. 1990) (holding that after a 12(b)(2) motion is made, "plaintiff must respond with actual proofs, not mere allegations").  To exercise personal jurisdiction, a court must examine all of the evidence presented by the non-moving party; controverting evidence presented *by the moving party* need not be considered by the court in determining whether the plaintiff has established its prima facie case of jurisdiction.  *Bryan v. Assoc. Container Transp. (A.C.T.)*, 837 F. Supp. 633, 639 (D.N.J. 1993).

Here, Synergy – not Manama, the moving party – presents conflicting documentary evidence regarding the location of the final inspection: (1) Ellner's affidavit alleging an oral agreement, which stipulates that the parties intended the contracts to be ultimately performed in New Jersey; and (2) the written sales contracts, attached to Ellner's affidavit, which suggest the parties intended the contracts to be completed in Bahrain.  (Ellner Aff., Ex. A.)  Accordingly, the Court must weigh *both* documents presented by Synergy to determine whether Synergy establishes a prima facie case of jurisdiction.

The sales contracts expressly stated that final inspection of the goods was to be conducted by Rajput in Bahrain.  These contracts, signed by both parties, represent *undisputed* evidence of the parties' agreement.  By contrast, Synergy offers no support for its allegation of the parties'

mutual oral agreement that final inspection was to take place in New Jersey.  Consequently,

Synergy's mere allegation regarding the final inspection is not supported by "competent

evidence" that is necessary at this jurisdictional stage.  *Burke v. Quartey*, 969 F. Supp. 921, 924

(D.N.J. 1997).  Thus, the oral agreement's alleged "final inspection" provision does not support

Synergy's prima facie case of jurisdiction.

### 3.      *Cost & Freight Shipping Terms*

Next, the sales contracts stated that the delivery terms were "C&F," which is a common

industry term known as "cost and freight."  (Ellner Aff., Ex. A, Part II at 1.)  This term is defined

in the Uniform Commercial Code ("UCC"):[3] "The term C. & F. or C.F. means that the price so

includes cost and freight to the named destination," N.J.S.A. § 12A:2-320(2), with title and risk

of loss passing to the buyer upon shipment of the goods from the seller's port, N.J.S.A. § 12A:2-

320 cmt. 1 (2007).  This term is similarly defined by the International Chamber of Commerce, a

recognized authority on international sales terms.  (*See* Aff. of David Langlois in Support of Mot.

to Dismiss for Lack of Personal Jurisdiction ("Langlois Aff."), Ex. 9 ("The seller must pay the

costs and freight necessary to bring the goods to the named port of destination but the risk of loss

of or damage to the goods, as well as of additional costs due to events occurring after the time of

delivery, are transferred from the seller to the buyer.").); *see also In re Daewoo Intern. (Am.)*

*Corp.*, No. 01-8205, 2001 WL 1537687, at *3 (S.D.N.Y. Dec. 3, 2001) ("Under [C&F] contracts,

---

[3] In New Jersey, "[t]he Uniform Commercial Code-Sales (UCC-Sales), N.J.S.A. § 12A:2-101 to -725, applies to 'transactions in goods.'"  *Quality Guaranteed Roofing, Inc. v. Hoffman-La Roche, Inc.*, 302 N.J. Super. 163, 166 (App. Div. 1997).  Sitting in diversity, this Court applies New Jersey's version of the UCC to the instant case because Manama contracted to provide Synergy with goods – textiles, cotton, and finished products.

the seller must pay the costs and freight to bring the goods to the delivery port, but title and the risk of loss pass to the buyer when the cargo is loaded on board the vessel.").

Although Manama admits tendering its products to an ocean carrier for delivery to Synergy in New Jersey, it contends, based on the "C&F" shipping terms, that it did not purposefully subject itself to New Jersey's jurisdiction. It argues, in essence, that booking cargo to a particular port, at Synergy's request, is a unilateral act of Synergy, and is not a purposeful availment of the laws governing the port of destination. *See, e.g.*, *Jacobs v. Walt Disney World,* 309 N.J. Super. 443, 453 (App. Div. 1998) ("Unilateral actions of 'those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum state.") (quoting *Hanson*, 357 U.S. at 253).

Manama relies on *Thypin Steel Co. v. M/V* for the notion that personal jurisdiction cannot be maintained when the non-resident party contracts away title and risk of loss. No. 96-1799, 1997 U.S. Dist. LEXIS 4454, at *13-14 (E.D. Pa. Apr. 3, 1997). In that case, the court dismissed the suit for lack of personal jurisdiction because the parties contracted for title and risk of loss to pass *outside the forum state*. *Id.* The parties entered into a sales contract whereby "the sales price included the cost of transportation, and that title to the cargo and risk of loss passed to [the resident party] when the [] products passed the ship's rail at the port of loading." *Id.* at *13. In addition, the resident party agreed to unload the cargo free of risk and expense to the non-resident party. *Id.* "Given these facts," the court held that the non-resident party "did not purposefully avail itself of the privilege of acting within" the forum state because the shipment of the goods into the forum state constituted the resident party's unilateral act. *Id.* at *13-14.

14

Citing *Thypin Steel*, Manama argues that the "C&F" shipping terms are "determinative" in analyzing specific jurisdiction.  (Manama's Reply Br. at 4.)  The Court is not convinced.  The substantial weight of authority makes clear that a passing of title and risk of loss provision is not dispositive for jurisdictional purposes.

For instance, in *Cruz*, the court found sufficient minimum contacts to sustain personal jurisdiction despite the passage of title and risk of loss outside the forum state.  253 N.J. Super. at 73.  There, the court stated: "Whose carrier would actually transport this piece of machinery to New Jersey and which party would pay the freight are business matters, not in the context of this case, jurisdictional ones.  We think it clear, in any event, that a party otherwise subject to long-arm jurisdiction by reason of the substantive nature of his contacts cannot immunize himself from the exercise thereof" by employing a passing of title and risk of loss provision in the parties' shipping contract.  *Id.*  Thus, the court found personal jurisdiction based on the non-resident party's other contacts with New Jersey that demonstrated purposeful availment of New Jersey law.  *Id.*; *see also Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 282 (3d Cir. 1994) ("Nothing in Justice O'Connor's plurality opinion [in *World-Wide Volkswagen*] suggests that the fact that a foreign manufacturer or seller rids itself of title . . . is enough to insulate that manufacturer or seller from jurisdiction" if there are other minimum contacts giving rise to specific jurisdiction); *A.V. Imps.*, 171 F. Supp. 2d at 374 (disregarding argument that passing of title provision was dispositive of jurisdictional question); *Accura Zeisel Mach. Corp. v. Timco, Inc.*, 305 N.J. Super. 559, 570 (App. Div. 1997) (finding personal jurisdiction despite a passing of title and risk of loss agreement in the parties' shipping contract).

Courts in other jurisdictions have also found that shipping terms are not controlling for

15

jurisdictional purposes.  *See, e.g.*, *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1548 (11th

Cir. 1993) ("[T]he fact that title to the [goods] passed to [the resident party] in France rather than

in the United States in no way determines the degree of contacts between the United States and

[the non-resident party]."); *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 197 n.8 (5th Cir. 1980) ("We

note that jurisdiction does not depend on the technicalities of when title passes."); *L.D. Reeder*

*Contractors of Ariz. v. Higgins Indus., Inc.*, 265 F.2d 768, 774 (9th Cir. 1959) (disregarding a

passage of title/risk of loss arrangement in determining the "controlling" jurisdictional contacts);

*Moore v. Little Giant Indus., Inc.*, 513 F. Supp. 1043, 1047 (D. Del. 1981) (rejecting resolution

of jurisdictional determination based on the passage of title and risk of loss provision).  Thus,

this Court does not consider the "C&F" terms contained in the parties' sales contracts dispositive

of the jurisdictional inquiry.

Further, *Thypin Steel* is distinguishable from the instant matter because that court

declined to exercise personal jurisdiction because no other minimum contacts were alleged aside

from the "C&F" terms of the shipping contract.[4]  Here, the Court follows the guidance of the

Supreme Court of the United States, which directs courts to consider more than just the terms of

a contract in scrutinizing minimum contacts.  "It is these factors - prior negotiations and

contemplated future consequences, along with the terms of the contract and the parties' actual

course of dealing - that must be evaluated[.]"  *Burger King*, 471 U.S. at 479.  In *Cruz*, for

---

[4] This fact similarly distinguishes *Charia v. Cigarette Racing Team, Inc.*, cited by
Manama, where the Fifth Circuit considered the shipping contract's passage of title and risk of
loss provision a contributing factor in finding insufficient contacts to confer personal jurisdiction.
583 F.2d 184, 189 (5th Cir. 1978). Ultimately, the court held that no personal jurisdiction could
be sustained *on the collective basis* of defendant's additional alleged contacts with the forum
state.  *Id.*

example, the court grounded its assertion of personal jurisdiction in the non-resident party's customized production for a New Jersey corporation, despite contract terms that passed title and risk of loss outside of New Jersey. 253 N.J. Super. at 73. In that vein, the Court here will examine several broad categories of contacts that could render Manama amenable to jurisdiction. *Keeton*, 465 U.S. at 774.

In sum, the terms of the parties' oral agreement and written sales contracts offer, at best, mixed support for personal jurisdiction. For instance, the Court finds that the oral agreement indicates that Manama envisioned "future consequences" deriving from its contract with Synergy, *Burger King*, 471 U.S. at 479; at the same time, the terms of the written sales contracts suggest that Manama agreed to perform the agreements in Bahrain, not in New Jersey. However, this Court cannot determine personal jurisdiction solely on the basis of the terms of a contract. *Burger King*, 471 U.S. at 463. Thus, this Court must turn to Manama's financial transactions, correspondence, customized production, and shipments with and to Synergy in New Jersey to ascertain whether specific jurisdiction can be sustained.

### B.     Financial Transactions Between Manama and Synergy

Synergy argues that Manama purposefully directed its activities to New Jersey because Manama received payment from its bank in Bahrain by drawing on Synergy's and/or Shelinsky's bank account in New Jersey. (Synergy's Br. at 11.) However, it is improper to sustain specific jurisdiction on the basis of the location of a resident party's bank. The Supreme Court of the United States expressly rejected this argument in *Helicopteros*:

> [The non-resident party's] acceptance from [the resident party] of
> checks drawn on a Texas bank is of negligible significance for

17

> purposes of determining whether [the non-resident party] had sufficient contacts in Texas. . . .  Common sense and everyday experience suggest that, absent unusual circumstances, *the bank on which a check is drawn is generally of little consequence to the payee and is a matter left to the discretion of the drawer.*  Such unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction.

466 U.S. at 416-17 (emphasis added); *see also Mellon Bank East (PSFS), NA v. DiVeronica Bros., Inc.*, 983 F.2d 551, 555 (3d Cir. 1993) (finding no personal jurisdiction based on the location of the bank upon which the non-resident party's check was drawn because "there is nothing to suggest that [the non-resident party] had any involvement in the selection by [the resident party] of a [resident] bank").

Analogously, Synergy presents no evidence that Manama had any involvement in the selection of Valley National Bank to process Synergy's transactions.  The letters of credit required presentation of negotiable bills of lading and inspection certificates in Bahrain, and Synergy's payments were cashed by Manama in Bahrain.  Synergy's unilateral act of selecting Valley National Bank in New Jersey to facilitate its financial transaction with Manama cannot be imputed to Manama as Manama's own purposeful act.  Thus, the parties' financial transactions cannot serve as a ground to sustain personal jurisdiction over Manama.

## C.  Emails & Telephone Calls From Manama in Bahrain to Synergy in New Jersey

Synergy next argues that Manama engaged in communications and correspondence with Synergy such that Manama is subject to the jurisdiction of this forum.  Specifically, Synergy contends that Manama's communications formed the material terms for the contracts allegedly

breached and at issue in this litigation.  (Synergy's Br. at 10.)  As support, Synergy produces

documentary evidence illustrating the exchange of approximately 140 emails and 50 to 60 phone

calls between the parties over the course of their business relationship.

Courts have regularly held that "communications directed into New Jersey go a long way

toward establishing minimum contacts."  *Eaton Corp. v. Maslym Holding Co.*, 929 F. Supp. 792,

798 (D.N.J. 1996).  For instance, in *Kultur International Films, Ltd. v. Covent Garden Pioneer*,

the court found that minimum contacts existed based upon phone calls, telefaxes, and letters sent

in connection with negotiations and an agreement.  860 F. Supp. 1055, 1062 (D.N.J. 1994).

Here, however, Manama's emails are insufficient to confer jurisdiction because its

communications offering contract negotiations relate to future contracts whose performance is

not at issue in the instant matter.  For example, in one email from June 3, 2006, Nishat discussed

negotiating terms with Ellner:

> For all *future* business we should receive inquiries directly from your
> side with CC to Mr. Asif.  []We will revert back to you directly
> regarding price, shipments and quality specifications with CC to Mr.
> Asif. . . . [Manama] will quote fresh prices on your new inquiries and
> *we will apply them for the 2nd half of 2006*.

(Shelinsky Aff., Ex. I, Part 1 at 11 (emphasis added).)  Nishat reiterated his negotiations with

Synergy for future contracts in emails dated June 6 and 13, 2006.  (*Id.* at 22-23.)  Accordingly,

because Synergy's cause of action does not arise from these emails, such communications

relating to future contracts not at issue here are insufficient to confer jurisdiction.[5]  *See Vetrotex*,

---

[5] The handful of emails proferred by Synergy dated prior to the execution of the last sales
contract on May 10, 2006 did not concern contract negotiations.  Rather, these emails are merely
"incidental," *DeLear*, 95 N.J. Super. at 350-51, or "informational," *Sunbelt*, 5 F.3d at 32,

75 F. 3d at 153 ("[T]he negotiations that occurred between [the non-resident party] and [the resident party] in the 1980s are unrelated to the 1992 [] Contract and are not relevant to specific jurisdiction."); *Grand Entm't*, 988 F.2d at 480 (noting that "the contacts evaluated are those that give rise to the litigation").

For similar reasons, the Court finds that Manama's phone calls to Synergy are insufficient contacts to support personal jurisdiction over Manama. *See Sunbelt*, 5 F.3d at 33 ("The telephone calls allegedly made by [the non-resident party] are not the basis of the cause of action."). Thus, Manama's emails and telephone calls sent to Synergy in New Jersey are insufficient contacts to establish Synergy's prima facie case of jurisdiction.

### D.   Manama's Customized Production, and Shipment of Products, Samples, and Paperwork to Synergy in New Jersey

Because personal jurisdiction may not be sustained through a "traditional analysis," the Court examines Manama's remaining contacts on stream of commerce principles. *Cruz*, 253 N.J. Super. at 72. The core of Synergy's prima facie case of jurisdiction revolves around Manama's customized production, and shipment of products, samples, and paperwork to Synergy in New Jersey over the course of the parties' business relationship. These contacts are sufficient to confer personal jurisdiction over Manama.

Addressing its 51 shipments of products to Synergy, Manama again relies on the "C&F" shipping terms to argue that it did not purposefully direct its activities to New Jersey. However, as the Court has already found, the "absence of direct sales or shipments into New Jersey is not

communications that did not establish the material contractual terms that were allegedly breached, and at issue in this suit.

dispositive for jurisdictional purposes." *A.V. Imps.*, 171 F. Supp. 2d at 374.  Even without direct

shipments to New Jersey, personal jurisdiction may be sustained over Manama by virtue of

Manama's *indirect* shipments to Synergy.  *See Charles Gendler & Co., Inc. v. Telecom Equip.

Corp.*, 102 N.J. 460, 478 (1986) (finding that a foreign manufacturer still "benefits from the

protection provided by the laws of the forum state" by its indirect sale of its products to the

resident client).

"While neither [party] discuss[es] this approach by name, the [C]ourt believes that a

stream of commerce analysis is applicable to the question of personal jurisdiction in this case."

*Visual Sec. Concepts, Inc. v. KTV, Inc.*, 102 F. Supp. 2d 601, 606 (E.D. Pa. 2000).  The stream of

commerce theory permits a court to exercise specific jurisdiction "over a nonresident defendant

which injected its goods, albeit indirectly, into the forum state and either 'derived [a] substantial

benefit from the forum state or had a reasonable expectation of [deriving a substantial benefit

from it].'"  *Pennzoil Prod. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 203 (3d Cir. 1998)

(quoting *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 300 (3d Cir. 1985).  Typically, courts

employ the stream of commerce theory in products liability cases.  *DeJames v. Magnificence

Carriers, Inc.*, 654 F.2d 280, 285 (3d Cir. 1981).  However, New Jersey courts have expanded

this doctrine to apply to actions involving property damage, economic loss, or breach of contract.

*See Gendler*, 102 N.J. at 483 ("[W]e perceive no basis for allowing *the nature* of the injury to

preclude the application of the stream-of-commerce theory.") (emphasis added); *see also United

Linen Wholesale, L.L.C. v. Northwest Co.*, No. 06-5934, slip op., 2007 WL 2156353, at *3

(D.N.J. July 26, 2007) (employing stream of commerce theory to sustain personal jurisdiction in

action for breach of contract); *Buchanan-Ezratty Assoc., Inc. v. Rival Co.*, No. 94-4088, 1994

WL 673492, at *3 (D.N.J. Nov. 30, 1994) (applying stream of commerce theory for cause of action sounding in quantum meruit).  Thus, following the Supreme Court of New Jersey and the persuasive lead of other courts in this District, this Court will apply the stream of commerce theory to the instant facts.

In *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, the Supreme Court of the United States issued a split decision that articulated varying standards to sustain personal jurisdiction under the stream of commerce theory.  480 U.S. 102 (1987).  Applying *Asahi*'s most "stringent" standard, *Pennzoil*, 149 F.3d at 206, the Court must first find "[t]he placement of a product into the stream of commerce[.]" *Asahi*, 480 U.S. at 112.  It is undisputed that Manama delivered its goods to port in Bahrain and arranged for the shipment of such products to "Synergy/Cranford USA" via the port of "New York."  (Ellner Aff., Part A, Part 2 at 1.)

Next, the Court must find "[a]dditional conduct" of the defendant that indicates "an intent or purpose to serve the market in the forum state, for example, designing the product for the market in the forum state[.]" *Asahi*, 480 U.S. at 112.  Courts have sustained personal jurisdiction by finding such "additional conduct" in a variety of circumstances.  In *Pennzoil*, our Circuit found minimum contacts partly because the defendant wished to design a product to serve the forum state's market and because it regularly interacted with a corporation's personnel in the forum state to improve products.  149 F.3d at 206.  In *A.V. Imports*, the court sustained a finding of personal jurisdiction because, in addition to placing its products in the stream of commerce, the non-resident party established a relationship, and jointly marketed the product in the United States, with the resident party.  171 F. Supp. 2d at 374; *see also Revak v. Locatum A.B.*, No. 03-4822, 2005 WL 1017771, at *4 (E.D. Pa. Apr. 28, 2005) (finding no personal jurisdiction

22

because "the record in this case shows that [the non-resident party] is a foreign-based entity that has never sold or leased goods that were specifically for use in the United States, and has never sold or leased goods to customers in the United States").  The placement of products into the stream of commerce, paired with additional conduct showing intent or purpose to direct its activities to the forum state, justifies the Court's assertion of personal jurisdiction over a non-resident party.  *Asahi*, 480 U.S. at 112.

Here, Manama engaged in additional conduct that renders it amenable to jurisdiction in this forum based on its "actual course of dealing," *Burger King*, 471 U.S. at 479, namely, Manama's: (1) customized production of goods for Synergy's use in New Jersey; (2) direct shipment of samples into New Jersey; and (3) direct shipment of paperwork into New Jersey confirming the alleged fulfillment of Manama's contractual obligations.  These examples of additional conduct demonstrate Manama's "intent or purpose to serve the market" in New Jersey sufficient to confer personal jurisdiction over it under stream of commerce principles.  *Asahi*, 480 U.S. at 112.

First, Manama's customized production of goods for Synergy supports a finding that Manama had possessed the requisite intent to serve the New Jersey market.  For instance, the parties' November 2005 oral agreement and several emails support Manama's intent to design goods for the forum market.  (Ellner Aff. at ¶ 13.)  In Ellner's affidavit, he states: "Synergy and Manama set on a course to develop a long term business relationship, whereby . . . Manama would manufacture, prepare, and deliver textiles, cotton and finished goods to Synergy in Cranford, New Jersey."  (*Id.*)  Further, in an April 8, 2006 email to Ellner, Nishat specified his design/manufacturing activities:

> [I] have put all kind of efforts through our Spinning and Weaving to improve the required parameters.  Since Mr. Asif raised this issue a couple of weeks ago we have improved our yarn strength by 10% which immediately has shown results in the fabric tenstile [sic] strength.  New fabric is now in production with at least 7-10% better RKM . . . I would [sic] to thank you for your patience with us and would like you to know we are working continuously on improvements for you on daily bases.

(Ellner Aff., Ex. E, Part at 2.)  Thus, the Court finds that Manama tailored its production to meet the needs of the parties' business contracts.

Manama's direct shipment of samples into New Jersey also constitutes additional conduct rendering Manama amenable to jurisdiction.  Manama relies on *Eaton* to argue that samples should not be considered in the Court's minimum contacts analysis.  929 F. Supp. at 795.  In *Eaton*, the court addressed the fact that the defendant shipped samples into the forum state, but chose not to weigh this act in its personal jurisdiction analysis.  *See Eaton*, 929 F. Supp. at 795 ("[The non-resident party] has also shipped sample products to [the resident party] in New Jersey, but these were sent for the purpose of quality approval; they did not enter the stream of commerce in the United States.").  However, in *Pennzoil*, our Circuit examined Pennsylvania law[6] and opined that a non-resident party's shipment of samples into the forum state supported a finding that the non-resident party intended to purposefully direct its activities to the forum state: "Sending solvent samples to [the resident party's] laboratories demonstrated an intent to design a product which could be used to serve [the forum state's] market."  149 F.3d at 206 (internal quotation omitted).

---

[6] Pennsylvania law is "identical" to New Jersey's long-arm statute.  *See Leja v. Schmidt Mfg., Inc.*, 01-5042, 2005 WL 2009924, at *2 (D.N.J. Aug. 17, 2005).

New Jersey law reinforces the *Pennzoil* court's reasoning.  In *Lebel v. Everglades Marina, Inc.*, the Supreme Court of New Jersey emphasized that actions illustrating awareness of, or intent to serve, New Jersey may count towards finding minimum contacts.  115 N.J. 317, 327-28 (1989).  Another court sustained personal jurisdiction for a breach of contract action where "the Defendant *knew or should have known* of the distribution system through which its products were being sold in the forum state."  *United Linen Wholesale*, No. 06-5934, 2007 WL 2156353, at *3 (emphasis added) (internal quotation omitted); *see also Dave's Trash Removal v. Charm City Equip. Corp.*, 214 N.J. Super. 497, 503 (App. Div. 1987) ("It is clear that where a defendant takes an action *knowing* that it will have an effect in the forum state, it may be subject to jurisdiction for claims based upon such consequences.") (emphasis added).

The Court finds the *Pennzoil* court's reasoning compelling.  Manama's direct shipment of samples to Synergy in New Jersey demonstrates that Manama *knew* that its agreements with Synergy contemplated manufacturing goods for use in New Jersey because Manama sent its samples to help facilitate its customized production of goods for Synergy's business.  For example, Manama incurred substantial "development costs" in producing, as Nishat described in an email, "various samples like coolmax, T 1200, [and] Jaccard."  (Ellner Aff., Ex. E, Part 1 at 2.).  Nishat also sent a product sample to help Synergy achieve, through Manama's production, a "foot hold in the market."  (*Id.*, Ex. E, Part 1.).  Thus, Manama's direct shipment of samples to Synergy illustrates that Manama knew or "could have reasonably foreseen that its contacts with [Synergy] would have had some type of impact on [Synergy] and New Jersey[.]"  *Kultur*, 860 F. Supp. at 1062; *see also Covenant Bank for Sav. v. Cohen*, 806 F. Supp. 52, 56 (D.N.J. 1992) (stating that the non-resident party's action must be generally aimed at the forum state and not

just at the plaintiff).

Manama's shipment of paperwork into New Jersey is additional conduct that further shows Manama's knowledge of, and intent to service, the New Jersey market. *Cf. Pierce v. Hayward Indus., Inc.*, No. 05-5322, 2006 WL 891149, at *4 (E.D. Pa. Apr. 4, 2006) ("It does not appear there is any conduct that shows an intent by [the non-resident party] to service the [forum state] market."). Manama sent paperwork into New Jersey to confirm with Synergy its alleged fulfillment of the parties' contractual agreements to provide goods for Synergy's New Jersey business. For instance, Manama prepared commercial invoices that listed Shelinksy & Sons in New Jersey as the applicant; described "Synergy/Cranford USA" as its "customer"; and signed certificates of origin specifying Shelinksy & Sons as the consignee. (Ellner Aff., Exs. A, C.) This paperwork was sent by DHL air shipment *directly* from Manama to New Jersey on approximately 51 different occasions. (Shelinsky Aff., Ex. J.) These activities demonstrate Manama's intent to provide its goods to Synergy in New Jersey. In this vein, it is immaterial that the sales contracts described "New York" and not "New Jersey" as the port of destination. (Ellner Aff., Ex. A, Part 2 at 1.) The paperwork prepared by Manama and subsequently sent directly *to New Jersey* show that Manama knew that its products were designed and destined for New Jersey.

Based on Manama's customized production, and shipment of products, samples, and paperwork, the Court finds that Manama's conduct was neither "random," "fortuitous," or "attenuated." *Burger King*, 471 U.S. at 479-80. Rather, it was deliberate, sustained, and significant, with the intent to furnish Synergy's New Jersey business with textiles, cotton, and finished goods, manufactured to Synergy's specifications, to the pecuniary benefit of Manama's

26

growing enterprise.  Having purposefully pursued gain by the production and distribution of

goods for New Jersey, Manama "benefitt[ed] legally from the protection provided by the laws of

the forum state for its products."  *DeJames*, 654 F.2d at 285.

It is also clear that Manama's customized production and shipment activities "relate to"

or give rise to Synergy's cause of action.  *Helicopteros*, 466 U.S. at 415.  Manama's breach of

contract claim results from its alleged failure to properly design and manufacture goods in

conformance with Synergy's specific needs.  When Manama subsequently arranged for the

shipment of the goods and confirmed its supposed fulfillment of the contract terms in the parties'

paperwork, such actions collectively constituted an alleged breach of Manama's contractual

obligations.  Thus, Synergy's cause of action relates to, or arises from, Manama's minimum

contacts with New Jersey.

In sum, Manama's oral agreement, production obligations, and shipments of samples and

paperwork into New Jersey constitute minimum contacts sufficient to permit a finding of

personal jurisdiction over Manama.[7]  These contacts provide the "factual underpinnings" to

---

[7] Synergy also argues that "Manama's retention of two different law firms and a
collection agency to pursue Synergy . . . are further evidence of Manama's substantial contacts
with Synergy[.]" (Synergy's Br. at 11.)  However, the Court does not consider these actions as
relevant minimum contacts because these incidents did not give rise to Synergy's cause of action.
These contacts arose from, and after, Synergy's filing of the instant Complaint on August 31,
2006.  *See Wartsila NSD N. Am., Inc. v. Hill Intern., Inc.*, 269 F. Supp. 2d 547, 555 (D.N.J.
2003) (finding non-resident party's retention of lawyer in connection with litigation insufficient
to confer personal jurisdiction where resident party's cause of action does not arise from such a
contact); *see also Isenberg v. Yanni's Remodeling*, No. 07-3646, slip op., 2007 WL 3252542, at
*4 (D.N.J. Oct. 31, 2007) ("Plaintiffs' cause of action arises from the April 9, 2005 contract
between the parties, not from Defendants' hiring of a Pennsylvania attorney, even if the attorney
was hired to collect outstanding fees from Plaintiffs. . . .  This court fails to see how Plaintiffs'
injuries arise out of or are related in any way to Defendants' hiring of an attorney.").

Synergy's contract claim, *Kultur*, 860 F. Supp. at 1063, and demonstrate that Manama

purposefully directed its activity toward Synergy and New Jersey.  Therefore, Manama "could

have reasonably foreseen that it might be called into this Court as a defendant" on Synergy's

"pending claims which arise directly out of" Manama's specific contacts with New Jersey.  *Id.*

Because the Court exercises specific jurisdiction, it need not reach whether it may exercise

general jurisdiction over Manama.

The inquiry does not end here, however.  Even where minimum contacts are present, the

strictures of the Due Process Clause forbid the exercise of personal jurisdiction under

circumstances that would offend "traditional notions of fair play and substantial justice."  *Asahi*,

480 U.S. at 113-14.

## II.   The Court's Exercise of Personal Jurisdiction Comports With Traditional Notions of Fair Play & Substantial Justice.

In considering whether personal jurisdiction here would violate traditional notions of fair

play and substantial justice, the court must assess: the burden on the defendant; the interest of the

forum state; plaintiff's interest in obtaining relief; the interstate judicial system's interest in

obtaining efficient resolution of controversies; and, if relevant, the shared interest of the several

states in furthering substantive policies.  *Lebel*, 115 N.J. at 328.  Manama must present a

"compelling case that the presence of some other considerations would render jurisdiction

unreasonable."  *Burger King*, 471 U.S. at 477.  The focus of the inquiry is foreseeability.  Thus,

the court considers whether the defendant's contacts with the forum state "make it reasonable for

the defendant to anticipate being haled into court there."  *World-Wide Volkswagen*, 444 U.S. at

297.

28

In evaluating the burden on Manama, the Court is mindful of the admonition of the Supreme Court of the United States that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114. Still, the cases are "rare . . . in which minimum requirements in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities." *Id.* at 116 (Brennan, J., concurring) (internal quotation omitted). The fact that a defendant resides overseas, alone, does not render the exercise of personal jurisdiction unreasonable. *See, e.g.*, *Fiscus v. Combus Fin. AG*, No. 03-1328, 2006 WL 1722607, at *8 (D.N.J. June 20, 2006) (asserting personal jurisdiction over Swiss defendants); *A.V. Imps.*, 171 F. Supp. 2d at 375-76 (Italian defendant); *CSR Ltd. v. Federal Ins. Co.*, 146 F. Supp. 2d 556, 563 (D.N.J. 2001) (Australian company) (Ackerman, J.); *Kultur*, 860 F. Supp. at 1063 (English defendant).

Manama argues that "the burden on Manama, based halfway around the world and having no agent who ever set foot in New Jersey, could hardly be greater." (Manama's Br. at 8.) Manama asserts that "[i]t would be manifestly unfair to drag a local Bahraini merchant into a remote forum, with an alien judicial system, with a different language, and with which it has no presence and conducted no activities." (Manama's Reply Br. at 13.)

Curiously, Manama representatives conversed in English throughout the course of 140 emails and 50 to 60 phone calls between the parties, despite the "alien" American system and tongue. In addition, Nishat was already willing to meet in England to discuss the parties' agreement: "Meeting you in London is not a problem for me[.]" (Ellner Aff., Ex. E, Part 1 at 2.)

Manama "risked potential litigation in New Jersey" when it agreed to design and direct its products for, and to, Synergy. *Fiscus*, 2006 WL 1722607, at *8 (internal quotation marks omitted). The same modern technology that Manama utilized to obtain the benefits of a business agreement with Synergy – ships, airplanes, email, and telephones – can facilitate Manama's defense of this suit. *See Burger King*, 471 U.S. at 474 ("[M]odern transportation and communications have made it much less burdensome for a party sued to defend himself in a state where he engages in economic activity."). The Court does not find that Manama's foreign location, alone, presents a "compelling" factor that renders personal jurisdiction "unreasonable." *Id.* at 477.

Second, New Jersey has an interest in adjudicating Synergy's claim. While the parties dispute whether the sales contracts were to be fully executed in Bahrain or in New Jersey, Manama's products were nonetheless manufactured for, and directed to, New Jersey. Due to these allegedly defective goods, which remain in New Jersey, Synergy contends that it suffered damage to its New Jersey business. Plainly, "New Jersey has an interest in protecting its residents and corporations from the injuries inflicted by out-of-state and foreign actors, and in preventing breaches of contract from affecting its economy and commercial operations." *Metex Mfg. Corp. v. Ian Manson*, No. 05-2948, 2006 U.S. Dist. LEXIS 54891, at *16 (D.N.J. Aug. 4, 2006).

Third, Synergy obviously has an interest in obtaining relief. A New Jersey corporation, Synergy alleges that it has suffered damages in excess of $1.2 million, or 4% of its total annual sales. Manama argues that it is pursuing a concurrent suit against Synergy in Bahrain, and thus, Synergy may obtain its requested relief in a Bahraini forum. However, Synergy was summoned

to appear before a Bahraini court on May 9, 2007, nearly *nine months after* Synergy filed the instant suit; in addition, the Bahraini suit arises from *Manama*'s own cause of action against Synergy to collect the remaining balance allegedly owed by Synergy to Manama.  (*See* Langlois Aff., Ex. 10.)  Although a Bahraini court might very well entertain Synergy's arguments, Synergy has not yet asserted its own claims before that court.  Thus, Synergy has an interest in pursuing efficient and effective relief before this Court without delay in reinstituting its claims abroad. *See Harley Davidson Motor Co., Inc. v. Advance Die Casting, Inc.*, 292 N.J. Super. 62, 76 (App. Div. 1996) ("The resolution of this controversy should not be delayed by the reinstitution of the action elsewhere.").

Fourth, the judicial system's interest in obtaining efficient resolution of this controversy supports the exercise of personal jurisdiction.  Manama argues that "[a]ll proof of manufacturing techniques, quality tests, . . . and witnesses" are located in Bahrain.  (Manama's Br. at 14.) However, Manama's evidence concerning its techniques and tests, like its witnesses, can easily be transported to New Jersey.  Further, only *Manama's witnesses* are located in Bahrain.  Ellner and Shelinksy, the primary negotiators for Synergy's agreements with Manama, are located in New Jersey; and Rajput, an ostensibly key witness regarding Synergy's Bahraini activities, lives in neither forum.[8]  Rajput has a valid United States entry visa and a New Jersey driver's license. (*See* Ellner Aff., Ex. H.)  These documents easily permit Rajput to participate in proceedings before this Court.  Finally, as discussed above, over $1.2 million in defective goods, which are the subject of this action, are being stored at Synergy's facility in New Jersey.  Thus, the efficient

---

[8] Synergy contends that Rajput "left Bahrain on September 12, 2006[.]"  (Synergy's Br. at 14-15.)

adjudication of this dispute supports this Court's jurisdiction.

Fifth, the shared interest of the several states and the federal government supports personal jurisdiction.  Manama argues that the signing of the U.S.-Bahrain Free Trade Agreement renders the exercise of personal jurisdiction here unreasonable.  The Court does not find this argument particularly relevant.  The existence of a free trade agreement between the United States and Bahrain does not create a blanket of immunity for a corporation's alleged misdeeds.  If a resident party alleges damages resulting from a non-resident party's breach of contract, the breaching party may be held accountable.  It is also noteworthy that Manama raises the existence of the free trade agreement as a defense to suit in New Jersey – yet this *bi*lateral agreement would, theoretically, have an equal bearing on the fairness of asserting jurisdiction over Synergy in Bahrain.  Ultimately, the analytical touchstone for this factor is that "foreign relations policies . . . [are] best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case."  *Asahi*, 480 U.S. at 116.  Here, this Court's assertion of personal jurisdiction over Manama is reasonable.  Thus, the alleged effect on foreign relations does not weigh against this Court's jurisdiction.

In sum, this Court's "exercise of specific jurisdiction over [Manama] comports with traditional notions of fair play and substantial justice as set forth in due process jurisprudence." *Harley Davidson*, 292 N.J. Super. at 76.

### Conclusion & Order

Manama has the requisite minimum contacts with New Jersey, and therefore, this Court may exercise personal jurisdiction over it.  For the foregoing reasons, it is hereby ORDERED

that Manama's motion to dismiss the Complaint is DENIED.

Dated: February 20, 2008

Newark, New Jersey

s/ Harold Ackerman

U.S.D.J.